***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner:
 STIPULATIONS *Page 2 
1. On March 18, 2009, the day of the alleged injury by accident giving rise to this claim, and at all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and, accordingly, all parties are properly before the Industrial Commission, which has jurisdiction of this claim and subject matter.
2. On March 18, 2009, and at all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. On March 18, 2009, and at all relevant times, Auto Owners Insurance was the insurer on the risk for defendant-employer.
4. Plaintiff claims and defendants deny that on or about March 18, 2009, plaintiff experienced an injury by accident to his back and right leg arising out of and in the course of his employment.
5. Plaintiff's average weekly wage was $551.02, yielding a compensation rate of $367.37 per week.
6. Plaintiff's issues for determination before the Full Commission are whether plaintiff experienced a compensable injury on or about March 18, 2009 and, if so, to what indemnity and/or medical compensation is plaintiff entitled as a result of this injury by accident.
7. Defendants' issues for determination before the Full Commission hearing are whether plaintiff sustained a compensable injury by accident on or about March 18, 2009, and if so, to what benefits, if any, is plaintiff entitled; and whether plaintiff is subject to sanctions under N.C. Gen. Stat. § 97-88.1 for failing to prosecute this claim on reasonable grounds.
 ***********
The following were marked and received into evidence as at the hearing before the Deputy Commissioner: *Page 3 
 EXHIBITS
1. Stipulated Exhibit 1 — Medical records.
2. Defendants' Exhibit 1 — Defendants' rules and policy.
3. Defendants' Exhibit 2 — Plaintiff's answers to first set of interrogatories.
4. Plaintiff's Exhibit 1 — Chiropractor work note.
 *********** RULINGS ON EVIDENTIARY MATTERS
Following the hearing before the Deputy Commissioner, defendants filed a Motion to Receive Additional Evidence consisting of an affidavit from George Case, Jr., to clarify Mr. Case's testimony at the hearing. The Deputy Commissioner denied defendants' motion and the Full Commission affirms the ruling of the Deputy Commissioner on this matter.
The Order filed October 1, 2010, by Chair Pamela T. Young which dismissed plaintiff's appeal of Deputy Commissioner Hall's June 16, 2010 Order is AFFIRMED. Defendants' Motion to Strike Plaintiff's Form 44 and Brief is ALLOWED in part. The portion of the Form 44 and Brief concerning the exclusion of Dr. Decker's testimony is STRICKEN from the record.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 35 years old and had completed the eleventh grade, but did not graduate from high school. Plaintiff began working for defendant-employer in January 2009 as a laborer earning $10.00 per hour and shortly thereafter was given a raise to $12.00 per hour. *Page 4 
2. Plaintiff worked at the Biltmore Park jobsite in Buncombe County performing manual labor as required. According to the jobsite foreman, George Case, Jr., plaintiff's job required him to do any tasks assigned except laying brick. Plaintiff's supervisors were Mr. Case and Rich Motter, the job superintendent.
3. On March 18, 2009, plaintiff was working with a co-worker, Josh Jellema, placing metal tower scaffolds from a Genie boom. Shortly before lunch, plaintiff and Mr. Jellema were working on the Genie boom at a height of 20-30 feet. As they were sliding the scaffold over the boom, Mr. Jellema released one hand of his grip, trying to get a better hold on the scaffold. Plaintiff was mid-twist and, when Mr. Jellema let go of the scaffold, plaintiff felt his back snap and his right leg and toes went numb. Plaintiff thought he had pulled a muscle, which is what he told Mr. Jellema and later Mr. Case.
4. Plaintiff continued to work the rest of the day, although he experienced pain in his back and down his right leg.
5. Mr. Jellema testified under subpoena at the hearing before the Deputy Commissioner and corroborated plaintiff's allegation that he injured his back while lifting tower scaffolding on March 18, 2009. According to Mr. Jellema, plaintiff was lifting the top and Mr. Jellema the bottom of the scaffolding. Mr. Jellema let go with his top hand so that he could get underneath the bar, and plaintiff had to catch more weight for a minute until Mr. Jellema got a grip on the scaffolding.
6. Mr. Jellema had been laid off by defendant-employer and re-hired the week prior to the hearing before the Deputy Commissioner. Mr. Jellema admitted he did not want to testify at the hearing because he did not want to become involved. Mr. Motter testified that Mr. Jellema told him that plaintiff said he would take care of Mr. Jellema if he testified. Although Mr. Jellema *Page 5 
initially denied such a conversation took place, he eventually admitted that, to some degree, plaintiff said he would "make it worth his while" to testify. Mr. Jellema said that he took that comment as a joke and the Full Commission finds that such statement by plaintiff was not made with the intent to induce Mr. Jellema to lie on the witness stand. Mr. Jellema testified that plaintiff asked him if he would be willing to come to court and Mr. Jellema responded that he "wasn't going to lie for nobody, but I'll come to court and tell you the truth."
7. The Full Commission finds plaintiff to be credible as to the incident with the scaffolding, as corroborated by Mr. Jellema's testimony, and therefore finds that on March 18, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
8. Plaintiff first sought medical treatment on March 30, 2009 from Dr. Susanne Decker at Boccichio Chiropractic Center. Plaintiff completed the initial patient intake form on March 30, 2009, and noted that his symptoms were sharp pain in his back down to his right knee and toe. Plaintiff indicated that his symptoms began two months prior. There is no reference on the form to a work-related accident occurring on March 18, 2009. Plaintiff told Dr. Decker that he was not sure what caused the back pain and did not know whether the injury had happened at work. Dr. Decker confirmed that plaintiff was in a great deal of pain.
9. After treating with Dr. Decker on March 30, 2009, plaintiff returned to defendant-employer and gave Mr. Case the doctor's note assigning light-duty work restrictions for the next three weeks. At this time plaintiff told Mr. Case that he had "re-hurt" his back when he was setting scaffolding. Defendant-employer allowed plaintiff to work light duty picking up trash around the jobsite. This work was within the work restrictions assigned by Dr. Decker and did not require plaintiff to bend, as he was given a stick with a nail on the end of it with which he *Page 6 
could pick up the trash. Plaintiff worked his normal hours while on light duty, although he sometimes arrived later in the morning due to difficulty getting out of bed due to the pain.
10. Plaintiff continued working in his light-duty position for two or three days, after which time he quit working.
11. The parties dispute whether plaintiff reported any work-related injury on March 18, 2009. On that date, plaintiff alleges he told Mr. Case that his back was sore. Plaintiff also alleges he told Mr. Motter about the accident. Both Mr. Case and Mr. Motter testified that plaintiff never mentioned injuring himself while at work on March 18, 2009. Mr. Motter was under the impression that plaintiff's longstanding back problems had gradually become worse over the past several months. Plaintiff was not sent for medical treatment, nor was he sent for a drug test as required by company policy, and no paperwork was completed or filed that day.
12. Plaintiff did not give defendant-employer written notice of the incident until he filed a Form 18 Notice of Accident with the Commission on July 28, 2009. Based on the greater weight of the evidence, the Full Commission finds that plaintiff did verbally report his injury to defendant-employer within 30 days of its occurrence. Plaintiff notified his supervisor on March 30, 2009, when he told Mr. Case that he had re-injured his back placing scaffolding and gave Mr. Case a light-duty work note. Because plaintiff gave actual notice to defendant-employer of his injury and presented the work note, plaintiff had a reasonable excuse for not providing written notice within 30 days of the incident. Defendants presented no evidence that they were unable to properly investigate the accident or were otherwise prejudiced by the lack of written notice of the injury by accident.
13. On April 13, 2009, plaintiff presented to Mission Hospitals for treatment of his low back pain. Plaintiff reported injuring himself while lifting scaffolding about two weeks *Page 7 
prior. Plaintiff had difficulty standing up and walking due to his pain.
14. An MRI scan showed a large disc herniation to the right at L5-S1 with a free fragment at the same level. Emergency room physician Dr. Mark Helms recommended that a neurosurgeon examine plaintiff. Dr. Jon M. Silver, a neurosurgeon, examined plaintiff and reviewed the MRI. Plaintiff informed Dr. Silver that he received chiropractic treatment after his injury which had not improved his back condition. Dr. Silver recommended a right L5-S1 discectomy and plaintiff underwent this procedure on April 15, 2009. At his deposition, Dr. Silver stated that plaintiff was not capable of working as of the first appointment on April 13, 2009.
15. Plaintiff followed up with Dr. Silver at Carolina Spine Neurosurgery Center beginning on April 23, 2009. Plaintiff continued to experience pain radiating down his right leg after surgery on April 15, 2009 and remained unable to work.
16. When he returned on May 18, 2009, plaintiff was asked to complete an initial patient health questionnaire. The form was completed by his girlfriend, Linda Cooper, but plaintiff provided the information for its completion and reviewed the answers. On the form, plaintiff indicated that his back pain began three years ago while lifting a rock. There is no reference to any alleged injury occurring on March 18, 2009 while setting scaffolding for defendant-employer.
17. Following his surgery, plaintiff failed to obtain relief from his back pain. He had severe pain in his back which radiated into his right leg and foot, as well as numbness and tingling. Plaintiff underwent an epidural steroid injection which failed to result in improvement to plaintiff's pain. After failed conservative therapies, Dr. Silver recommended another surgical procedure and on September 29, 2009, plaintiff underwent a posterior lumbar interbody fusion at *Page 8 
L5-S1 with pedicle screw instrumentation and L5-S1 laminectomies. Dr. Silver stated that during the period between the two surgeries plaintiff was not allowed to return to work because of his ongoing problems.
18. On November 3, 2009, Dr. Silver released plaintiff to return to work with no lifting over 30 pounds, the ability to move around, and no prolonged sitting or standing in one position. Plaintiff has not looked for work within these restrictions. Dr. Silver examined plaintiff again on January 4, 2010 and although no formal work restrictions were assigned, Dr. Silver testified that plaintiff was capable of returning to work within the restrictions assigned during the November 2009 appointment.
19. The Full Commission finds that, since being released to return to work on November 3, 2009, plaintiff was capable of some work but offered no evidence of a reasonable job search.
20. Both Dr. Helms and Dr. Silver testified that the scaffolding incident more likely than not produced the disc herniation which led to the two surgeries. Therefore, based upon the greater weight of the medical evidence, the Full Commission finds that plaintiff's injury by accident on March 18, 2009 caused the herniated disc and the resulting need for the two back surgeries.
21. Although plaintiff told Dr. Silver that he experienced the back injury approximately two weeks prior to his first treatment by Dr. Silver on April 13, 2009, Dr. Silver was not concerned about the discrepancy in injury dates. He testified that when people are in severe pain when they are in the emergency room in the middle of the night, they can be mistaken about the date of the onset of their pain.
22. As the result of the injury by accident on March 18, 2009, plaintiff was unable to *Page 9 
earn wages in any employment beginning April 13, 2009 and continuing through November 3, 2009, when he was capable of some work within his restrictions.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 18, 2009, plaintiff sustained a compensable injury by accident to his back, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. An injured worker is required to give written notice of the accident to the employer within 30 days of its occurrence or else he is barred from receiving compensation under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-22. When the employee fails to give timely written notice, the Commission cannot award compensation unless the claimant has a reasonable excuse for not giving written notice and the employer is not unfairly prejudiced by the delay. Gregory v. W.A. Brown and Sons,Inc., 363 N.C. 750, 688 S.E.2d 431 (2010). In this case, within 30 days of the incident, plaintiff told his supervisor that he had re-injured his back placing scaffolding and gave his supervisor a doctor's note restricting him to light-duty. Therefore, defendants had actual notice of the accident within 30 days of its occurrence, plaintiff could reasonably believe that he had given defendant-employer notice, and defendants were not prejudiced by the lack of written notice. Id.
3. Plaintiff has the burden of proving disability. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001). In order to meet the burden of proving disability, plaintiff must prove that he was incapable of *Page 10 
earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
4. In the instant case, plaintiff met his initial burden to show that he was disabled from any employment from April 13, 2009 until November 3, 2009 by the presentation of medical evidence. After November 3, 2009, plaintiff was capable of some work but failed to produce any evidence that he had engaged in a reasonable but unsuccessful job search. There is no evidence in the record that it would be futile for plaintiff to seek employment.Russell v. Lowes Product Distribution, supra.
5. As a result of his compensable injury, plaintiff was totally disabled from any employment and is entitled to payment of temporary total disability compensation at the rate of *Page 11 
$367.37 per week beginning April 13, 2009 and continuing until November 3, 2009. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatment may reasonable be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-2(19).
7. Plaintiff did not prosecute his claim without reasonable grounds and defendants are not entitled to attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $367.37 from April 13, 2009 until November 3, 2009, at which time plaintiff was capable of some work but failed to make a reasonable job search. The accrued amount shall be paid in lump sum.
2. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be pain directly to plaintiff's counsel from the accrued amounts.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident to his back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. *Page 12 
4. Defendants shall pay the costs due the Commission.
This 1st day of March, 2011.
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_________________ DANNY LEE MCDONALD COMMISSIONER
DISSENTING:
 S/______________ LINDA CHEATHAM COMMISSIONER *Page 13